## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHELLY MOORE, Individually and as<br>Class Representative, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:16-cv-227 |
| | ) | |
| SECRETARY, INDIANA FAMILY AND | ) | |
| SOCIAL SERVICES ADMINISTRATION, in | ) | |
| the Secretary's Official Capacity; INDIANA | ) | |
| FAMILY AND SOCIAL SERVICES | ) | |
| ADMINISTRATION, an Agency of the State | ) | |
| of Indiana; and ADVANTAGE HEALTH | ) | |
| SOLUTIONS, INC., a Business, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION & ORDER

Shelly Moore is a Medicaid recipient and two-time breast cancer survivor living

in Indiana. In 2013, she had the awful experience of being diagnosed with breast cancer

for the third time. Moore's oncologist recommended that she have her ovaries removed

and requested prior approval for the surgery (called an "oophorectomy") from

Medicaid. When the request was denied, Moore's doctor sent a written request asking

the Family and Social Services Administration ("FSSA"), which administers the

Medicaid program in Indiana, to reconsider its denial. However, the FSSA did not treat

the request as an appeal of the denial and so did not conduct an administrative review

of its denial or offer Moore a hearing.

What should be a relatively straight-forward case has been transformed into a

legal colossus. The First Amended Complaint alleges a putative class action against the Indiana Family and Social Services Administration (and its Secretary), as well as Advantage Health Solutions, a private company that contracts with FSSA to assist in administering the Indiana Medicaid program. Moore alleges breaches of federal and state contracts related to Medicaid, discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act, violation of the Medicaid Act, and infringement of Moore's rights to due process and equal protection under the Fourteenth Amendment of the U.S. Constitution. The defendants have moved to dismiss on a variety of grounds pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In addition, the FSSA has moved for denial of class certification. For the reasons set out below, the FSSA's motion is granted in part and denied in part, and Advantage's motion is granted.

## Background

Medicaid is a federal program that allows states to subsidize medical assistance to low-income individuals and families. *See* 42 U.S.C. § 1396, *et. seq.; Bontrager v. Ind. Family & Social Servs. Admin.*, 697 F.3d 604, 604 (7th Cir. 2012). In Indiana, the FSSA administers Medicaid, and it has contracted with defendant Advantage Health Solutions, Inc. to perform certain Medicaid-related tasks. (DE 29 at 3.) Though the complaint claims that Moore does not have access to Indiana's contract with Advantage, this is puzzling since it is publicly available on the state's webpage. *See* Prof. Servs. Contract; Ind. FSSA Contract with Adv. Health Sols., Inc., Dec. 9, 2013, https://fs.gmis.

in.gov/IDOAcontracts/public/74520-000.pdf. Among other things, it requires

Advantage to review requests for preapproval of medical services, decide whether

Medicaid will cover those services, and notify the provider and the member when a

service will not be covered. *Id.* at Ex. 1 - Scope of Work, §§ 1.1, 1.3 ¶ 29.

The complaint does a remarkably poor job of explaining what happened when

Moore's doctor sought prior authorization for Moore's oophorectomy. What follows are

the parts of the story that I could glean from the scant facts alleged in the complaint.

And, of course, for present purposes, I take these allegations to be true.

Moore is a Medicaid recipient who was diagnosed with breast cancer twice

before. (DE 29 ¶ 5.) Each time, she underwent radiation and chemotherapy and was

told that the cancer was in remission. (*Id.*) In 2013, she was diagnosed with breast cancer

a third time, and her oncologist advised her to have her ovaries removed because the

cancer is hormone-receptive, which means that hormones released by the ovaries cause

it to grow. (*Id.* ¶¶ 5, 12, 15.) The oncologist sent a request for prior approval of the

surgery to Medicaid on Moore's behalf, but the request was denied "some time in mid-

2013." (*Id.* ¶ 12.) The doctor then sent a "written request . . . that FSSA reconsider its

decision denying the request for surgery[,]" but the FSSA "did not treat the oncologist's

request as an appeal of its decision to deny the surgery and did not provide an agency

administrative review or hearing of the denial[.]" (*Id.*) Although it would have been

helpful to my consideration of this case, the complaint does not quote, summarize, or

incorporate the documents Moore's doctor sent to Medicaid or the notice(s) he received

back.

The complaint is by turns ambiguous and internally inconsistent, but I read it to allege a breach of contract claim and claims under the ADA, the Rehabilitation Act, and the Medicaid Act against the FSSA (Counts One, Three, Four, and Eight); a breach of contract claim and claims under the ADA and the Rehabilitation Act against Advantage (Counts Two, Five, Six, and Seven); and due process and equal protection claims against all three defendants (Count Nine). The complaint purports to bring all these claims on behalf of the following class:

> [A]ll past, current and future Indiana Medicaid recipients and applicants with disabilities (A) in need of accurate evaluations of their medical conditions for which Class members seek services or treatment recommended by the Class members treating physicians, doctors, or other medical providers; (B) but did not or will not receive accurate evaluations of their medical conditions; (C) and who suffered or are likely to suffer injuries as a result of the actions or inaction of the Secretary, FSSA, or Advantage.

(*Id.* ¶ 27.)

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Iqbal*, 556 U.S. at 678. "[L]egal conclusions can provide the complaint's framework, [but] they must be supported by factual allegations . . . [that] plausibly give rise to an entitlement to relief. *Id.* at 679.

Because the breach of contract claims alleged in Counts One and Two derive from the other claims alleged in the complaint, I will address them last.

### *Discrimination Claims against the FSSA (Counts Three and Four)*

Counts Three and Four of the complaint allege that FSSA denied Medicaid services and benefits and discriminated against her on the basis of a disability in violation of Title II of the ADA and section 504 of the Rehabilitation Act. (DE 29 ¶¶ 42–43, 49–50.) Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act is substantially similar. *See* 29 U.S.C. § 794(a). Indiana argues that these discrimination claims should be dismissed for failure to state a plausible claim on grounds that the complaint only alleges that Moore has cancer, which by itself, does not constitute a disability under the statutes. (DE 38 at 8.) I disagree.

Both the ADA and the Rehabilitation Act define "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" *See* 42 U.S.C. § 12102; 29 U.S.C. § 705 (9)(B). Indiana may be right that cancer isn't necessarily a disability, but the complaint alleges other physical

impairments. Specifically, it alleges that Moore has "neuropathy in her fingers and toes that prevents her from manipulating her fingers well and causes her to lose her balance" and that these problems were "severe enough to make her eligible for federal Social Security disability benefits." (*See* DE 29 ¶ 5.) Although a disability determination by the Social Security Administration doesn't necessarily mean one is disabled under the ADA (and, by extension, Rehabilitation Act), it does provide additional support for the notion that Moore's cancer "substantially limits one or more [of her] major life activities." *See Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001) (citations omitted). All this taken together is more than sufficient to allege a disability within the meaning of the ADA and the Rehabilitation Act.

Unfortunately for Moore, that's not the end of the matter because Indiana has also moved to dismiss these claims on grounds they don't plausibly allege discrimination *because of* a disability. (DE 38 at 8–9.) This is a more persuasive argument—and one Moore's brief utterly fails to address. A plausible claim under either Title II of the ADA or section 504 of the Rehabilitation Act requires not just allegations that Moore had a disability, but that "because of her disability, she was denied the benefits . . . or was otherwise subjected to discrimination. . . [which] means that the disability was the immediate cause of the discrimination or denial of benefits." *L.W. by Bridgett J. v. Ill. Dep't. Children & Family Servs.*, No. 13-cv-8463, 2015 WL 3476313, at *3 (N.D. Ill. June 1, 2015) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)); *see also Wisc. Comty. Servs., Inc. v. City of Milw.*, 465 F.3d 737, 752 (7th Cir.2006) ("Title II case law . . .

requires the plaintiff to show that, "but for" his disability, he would have been able to access the services or benefits desired.").

These counts fall short of this requirement. The complaint parrots regulatory language promulgated for the purposes of implementing the ADA. (*Compare* DE 29 ¶¶ 43, 50, *and* 28 C.F.R. § 35.130(b)(1)(v); DE 29 ¶¶ 45, 52, *and* 28 C.F.R. § 35.130(b)(8); DE 29 ¶¶ 44, 51, *and* 28 C.F.R. § 35.103(b)(3).) But regurgitated regulatory language cannot be the sum total of a plausible claim. Instead, it must be accompanied by factual allegations that support the elements of the claim and therefore give rise to a plausible inference that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679. For this reason, Counts Three and Four will be dismissed without prejudice, and Moore will be given an opportunity to file a second amended complaint if she wants to try to cure the deficiencies described above.

### *Discrimination Claims Against Advantage (Counts Five, Six, and Seven)*

Counts Five, Six, and Seven allege nearly identical discrimination claims against Advantage as were alleged against the FSSA. Specifically, the complaint claims that Advantage violated Title II and Title III of the ADA and section 504 of the Rehabilitation Act by "impos[ing] and appl[ying] eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying [Medicaid] when such criteria could not be shown to be necessary for the provision of [Medicaid]." (DE 29 ¶¶ 57, 64, 71.) The complaint further alleges that Advantage violated Title II of the ADA and the Rehabilitation Act by "utiliz[ing]

criteria or methods of administration" that had a discriminatory effect and/or purpose. (*Id.* ¶¶ 63, 70.) Advantage moves to dismiss these counts on grounds that they are untimely and, in an event, do not plausibly allege claims under the ADA and the Rehabilitation Act. (DE 41-1 at 7–15.) In addition, Advantage argues that Count Five must be dismissed because Title II does not apply to private entities like Advantage. (*Id.*)

Moore's response brief offers no coherent answer to any of these arguments. (*See generally* DE 43.) Regrettably, this is just one of many instances where Moore either failed entirely to respond to the defendants' arguments or chose to deflect with a discussion of an unrelated (or barely related) topic. That's a dangerous tactic. "If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant['s] reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (1999). "An unresponsive response is no response." *Id.*

Moore's response to Advantage's statute of limitations argument provides a good example of what I'm talking about. Moore responds that "[e]quitable relief for Moore and the class may include retrospective notice relief, which can reach to 2013 and beyond." (DE 43 at 3.) I'm not sure what that means. Retrospective notice relief is a form of relief that a federal court may award when it concludes that a state regulation or policy violated federal law. *See generally Quern v. Jordan,* 440 U.S. 332, 334 (1979). "Retrospective notice relief" has nothing to do with the statute of limitations. In other

words, the type of relief Moore may seek or the court may grant simply has no bearing on the pertinent question here, which is whether Moore's discrimination claims were timely filed.

And the answer to that question is "no." As Advantage notes, there is a two-year statute of limitations for ADA and Rehabilitation Act claims brought in Indiana. *See Soignier v. Amer. Bd. of Plastic Surgery*, 92 F.3d 547, n.3 (7th Cir. 1996) (collecting cases and agreeing that ADA claims under both Title II and Title III borrow the personal injury statute of limitations of the state in which the case is filed); *Conley v. Bedford Park*, 215 F.3d 703, 710, n.5 (7th Cir. 2000) (applying the personal injury statute of limitations to a Rehabilitation Act claim); *see also* Ind. Code § 34-11-2-4 (2013). Moore filed her complaint in April 2016, more than two years after she alleges her doctor's request for preauthorization was denied in mid-2013. (*See* DE 29 ¶ 12.)

It is true that a plaintiff is not required to plead facts that would overcome an affirmative defense like the statute of limitations. But by the same token, I can't ignore allegations that a plaintiff has willingly pleaded that make a statute of limitations defense impenetrable. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Put differently, where "the complaint itself set[s] forth everything necessary to satisfy the affirmative defense[,]" it's entirely appropriate to consider whether the statute of limitations bars a claim. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

Moore's complaint does not plead the exact date on which her claim was denied, but it does unambiguously declare that the prior authorization request was denied in

2013, more than two years before April 2016. (DE 29 ¶ 12; *see also* DE 43 at 3 (Moore's response referring to "[t]he events of 2013" as supporting her claims for equitable relief).) Nor does the complaint allege facts that could justify tolling the statute of limitations, such as fraud, fraudulent concealment, or legal disability. *See generally Trzeciak v. State Farm Fire & Cas. Co.*, 809 F. Supp. 2d 900, 911–12 (N.D. Ind. 2011) (setting out grounds for tolling under Indiana law). Accordingly, it's clear that Moore's ADA and Rehabilitation Act claims against Advantage were not timely filed, and they must be dismissed with prejudice.

One last thing: even if this case were timely brought, I would have to dismiss Moore's Title II ADA claim because that section of the ADA only prohibits disability discrimination in the services of a "public entity," which is defined to include states, their agencies, and their "instrumentalities." *See* 42 U.S.C. §§ 12131, 12132. The complaint asserts that Advantage is a public entity just because it contracted with the state. (DE 29 ¶ 60.) But an "instrumentality of the State" appears to mean "governmental units or units created by them." *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010); *see also Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (finding private hospital that contracted with municipality to provide services was not covered by Title II); *Phillips v. Tiona*, 508 Fed. App'x 737, 748–54 (10th Cir. 2013) (collecting cases and concluding, like the "overwhelming majority of courts" that Title II does not apply to private corporations that operate prisons). For this additional reason, Moore's Title II claim against Advantage must be dismissed.

*Medicaid Claim Against the FSSA (Count Eight)*[1]

Count Eight alleges that the FSSA violated the Medicaid statute by failing to treat a "written request" from Moore's doctor as a request for administrative review of the denial of prior authorization for Moore's oophorectomy. (DE 29 ¶ 74.) Count Eight also alleges that FSSA failed to provide adequate notice and an opportunity for a hearing relating to the denial of the claim. Indiana says this claim must be dismissed because Moore did not exhaust the administrative remedies provided by the Indiana Administrative Code before filing a case appealing a service denial. (DE 38 at 9 (citing 405 I.A.C. § 5-7-2).) This is an odd response since that's precisely what Moore is complaining about: she was never given adequate notice and an opportunity to appeal. In other words, as far as I can tell, Count Eight does not seek to *appeal* the Medicaid decision. Instead, it seeks to hold FSSA responsible for failing to provide the notice and opportunity for a hearing Moore says she was guaranteed by the Medicaid Act. As a result, whether Moore was required to administratively exhaust before appealing the denial of a *claim* has no bearing on whether she was somehow required to administratively exhaust before filing a suit to vindicate an alleged deprivation of

_____

[1]        Out of an abundance of caution, Advantage moved to dismiss this count even though it doesn't appear to allege a claim against the company. True, Count Eight refers to Advantage's denial of benefits in passing and Moore's breach of contract claim is partially premised on an alleged violation of the Medicaid Act by Advantage, but that does not change the fact that this claim alleges that it was the FSSA that failed to provide adequate notice and an opportunity for a hearing as required by the statute. (*See* DE 29 ¶¶ 73, 76.) Accordingly, there is no claim in Count Eight for Advantage to move to dismiss.

procedural guarantees given by the Medicaid Act. (DE 29 ¶ 75.)

Second, even if there were an administrative exhaustion requirement, it wouldn't matter because Moore claims that the FSSA hindered her access to the administrative review. (DE 29 ¶ 12.) A state cannot impede a Medicaid recipient's attempts to seek administrative remedies and then cry foul when the recipient fails to exhaust them. *See generally Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir.2011) (raising a similar concern in the context of administrative exhaustion required by the Prison Litigation Reform Act). For each of these reasons, failure to administratively exhaust is not fatal to this Medicaid claim.

Next, Indiana argues that Count Eight must be dismissed because a newspaper article mentioned in the complaint (but attached only to Indiana's brief) shows Moore was given notice and a chance to request an administrative review but just failed to request one. (DE 38 at 10.) This poses an intervening question about what documents I can consider on a motion to dismiss. The Seventh Circuit has held that a district court may consider documents attached to a defendant's motion to dismiss in ruling on the motion, so long as "they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc'd Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citation omitted). There are documents referred to in Moore's complaint that are central to her claims in this case—probably most important, the notice(s) issued by the FSSA/Advantage—but the newspaper article is not among them. Instead, the article merely provides a journalistic account of Moore's efforts to get Medicaid to cover her

surgery. (*See* DE 38-1.) For this reason, facts alleged in that article cannot be the basis for dismissing this claim.

Last, Indiana argues that the complaint alleges insufficient facts to support Count Eight and instead "baldly asserts that [Moore] was denied notice and an opportunity for hearing without explaining how that was so[.]" (DE 38 at 11.) I'm left to wonder what more is there to say. The complaint alleges that the FSSA violated Medicaid's requirement of adequate notice and opportunity for a hearing by failing to treat Moore's "oncologist's request as an appeal of [FSSA's] decision to deny the surgery and [by] not provid[ing] an agency administrative review or hearing[.]" (*See* DE 29 ¶¶ 12, 75.) While this is succinct, it's more than sufficient to satisfy the pleading standard in Rule 8. Under, Rule 8(a)(2), the complaint need only provide "a short and plain statement of the claim, which is sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests, including some indication of time and place[.]" *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (internal quotation marks, ellipses, and citations omitted). Given the factual allegations in the complaint, the FSSA knows that Count Eight is based on the notice(s) that the FSSA sent Moore in 2013 and on the FSSA's alleged failure to provide an administrative review or a hearing when Moore's doctor requested reconsideration of the denial of service.

For all of these reasons, FSSA's motion to dismiss Count Eight will be denied, and Moore will be permitted to proceed on this claim.

### *Fourteenth Amendment Claims Against the FSSA and the Secretary (Count Nine)*

Count Nine alleges that the FSSA and its Secretary deprived Moore of due process of the law in violation of the Fourteenth Amendment by failing to provide adequate notice and an opportunity for a hearing after denying prior authorization for Moore's surgery. (DE 29 ¶¶ 77–80.) In addition, Count Nine appears to allege an equal protection claim against the Indiana defendants, albeit an odd one for "failing to provide adequate notice and opportunity for hearing when . . . similarly situated Medicaid recipients and applicants have received adequate notice and opportunity for hearing." (*Id.* ¶ 79) Although the complaint never refers to 42 U.S.C. § 1983, the statute is a necessary vehicle for bringing Fourteenth Amendment claims. *See Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 732 (7th Cir. 1994) (superseded by statute on other grounds).

Indiana argues that these claims must be dismissed because the FSSA and the Secretary, if sued in his official capacity, are not "persons" as defined by section 1983. (DE 38 at 24.) I agree with the first part. The FSSA is a state agency and so not a "person" within the meaning of section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ill. Dunesland Pres. Soc'y. v. Ill. Dep't Nat'l Res.*, 584 F.3d 719, 721 (7th Cir. 2009). Thus, Count Nine as alleged against the FSSA must be dismissed with prejudice.

But the story is a bit different for the Secretary, who was named in his official capacity. Official capacity suits for *damages* are treated as suits against the state and therefore not viable under section 1983, but those seeking declaratory or injunctive

relief are permissible. *See Will*, 491 U.S. at 71, n.10 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the state.") (internal quotation marks and citations omitted). Here, Moore appears to be exclusively seeking declaratory and injunctive relief in Count Nine, and so the Secretary is a "person" for the purposes of the section 1983. (*See* DE 29 at 18, ¶ E (requesting only those damages allowed under the ADA and Rehabilitation Act).)

That's not the end of the matter, however. Indiana also alleges that the due process claim in Count Nine must be dismissed because it does not allege a plausible claim. The elements of a due process claim are that the plaintiff (1) had a cognizable property interest, (2) of which she was deprived, (3) without constitutionally sufficient process. *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005). As discussed above, it is not appropriate to consider the newspaper article attached to Indiana's briefing, so the factual underpinnings for Moore's due process claim must be in the complaint.

The State does not challenge Moore's allegations that she had a property interest in Medicaid benefits and services or that she was deprived of them. (*See generally* DE 29 ¶ 78; DE 38 at 11.) Property rights are protected by the Fourteenth Amendment but created elsewhere, for example by state or federal statutes. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). To have a protected property interest, a plaintiff must have more than a "unilateral expectation" of receiving a benefit; she must have a legitimate claim of entitlement to it. *Id.; Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015). In the Medicaid context, that "means that a person would be entitled to receive the government benefit

15

assuming she satisfied the preconditions to obtaining it[,]" or , in other words, "if award

of the benefit would follow from satisfaction of applicable eligibility criteria." *NB ex rel.*

*Peacock v. D.C.*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citation omitted). Moore has adequately

alleged a property interest in Medicaid benefits and deprivation of those benefits.

The state does argue that Moore's allegations don't satisfy the third requirement

of a due process claim because "Moore baldly asserts that she was denied notice and an

opportunity for hearing without explaining how that was so[.]" (DE 38 at 11.) Again,

I'm left wondering what else she needs to say. Moore alleges that the notice she

received from the FSSA did not provide adequate notice and that she wasn't given an

opportunity for a hearing before she was denied Medicaid benefits.(*See* DE 29 ¶¶ 12,

78.) This is enough to put the defendant on notice as to what Moore's claim is, and so

the state's motion will be denied as to the due process claim against the Secretary.[2]

### *Fourteenth Amendment Claims Against Advantage (Count Nine)*

Count Nine also alleges a due process claim against Advantage for "failing to

provide adequate notice and opportunity for [a] hearing" and an equal protection claim

for "failing to provide adequate notice and opportunity for hearing when FSSA and

Advantage have denied requested Medicaid benefits and services . . . when similarly

situated Medicaid recipients and applicants have received adequate notice and

opportunity for [a] hearing." (*Id.* ¶¶ 78, 79.) Advantage moves to dismiss both claims on

---

[2]      The state made no further arguments why the equal protection claim
against the Secretary should be dismissed, so that claim remains.

grounds that they are barred by the statute of limitations and because Moore has not alleged that Advantage was acting under color of state law, a requirement for Fourteenth Amendment claims. (DE 41-1 at 17–18.) The response is difficult to discern, and, at best, asserts with no support or further discussion that Advantage was a state actor. (*See* DE 43 at 5.) Moore's response also purports to incorporate Moore's arguments against Indiana's motion to dismiss Count Nine, but that does nothing to rebut Advantage's arguments, since Indiana advanced entirely different grounds for dismissal.

I agree with Advantage that Moore's complaint fails to allege that Advantage engaged in state action and that this shortcoming is fatal to Count Nine's claims against Advantage. (*See* DE 29 ¶ 77 (alleging that the Secretary was a state actor but not mentioning Advantage).) *See Banks v. Sec'y of Ind. Fam. & Soc. Servs.*, 997 F.2d 231, 247 (7th Cir. 1993). I suspect, however, that Moore could plausibly allege Advantage was a state actor if she had another chance, given that Advantage administered some part of Indiana's Medicaid program. *See e.g., Novak v. Ind. Family & Soc. Servs.* Admin., No. 1:10-cv-677, 2011 WL 1224813, at *6 (S.D. Ind. Mar. 30, 2011) (finding the entity that processed Medicaid applications acted under color of state law); *Gibson v. Int'l Bus. Machs. Corp.,* No. 1:10-cv-330, 2010 WL 3981792, at *7 (S.D. Ind Oct. 8, 2010) (finding that administered parts of Indiana's Medicaid program could be held liable under section 1983).

Nevertheless, it is unnecessary to give Moore that opportunity because

Advantage is correct that this claim is untimely. Section 1983 constitutional claims have a two-year limitations statute that derives from Indiana's personal injury statute of limitations. *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013); *see also* Ind. Code. § 34-11-2-4. As discussed above, no plaintiff is required to rebut a statute of limitations defense in her complaint, but, when a plaintiff opts to plead the relevant facts, it's entirely appropriate for a court to consider them on a motion to dismiss. Here, any constitutional claims Moore might have had against Advantage accrued in mid-2013, when her doctor's request for prior authorization and reconsideration were denied. That was more than two years before this case was filed, and there's nothing to suggest that the statute of limitations should be tolled. *See Trzeciak,* 809 F. Supp. 2d at 911. Accordingly, Moore's equal protection and due process claims alleged against Advantage in Count Nine are untimely and are dismissed with prejudice.

### Breach of Contract Claim Against the FSSA (Count One)

Count One alleges that the FSSA breached a contract with the U.S. Department of Health and Human Services to provide Medicaid benefits and services by failing to comply with Title II of the ADA, Section 504 of the Rehabilitation Act, and the Medicaid Act and by violating Moore's constitutional rights to due process and equal protection under the Fourteenth Amendment. (DE 29 at 8-9.) Indiana has moved to dismiss this Count on a number of grounds, but I need only discuss one—that the complaint does not plead a plausible contract claim and that, even if it did, Moore is not entitled to enforce that claim as a third-party beneficiary.

Count One is derived entirely from Moore's other claims against the FSSA in that it alleges the FSSA breached the Medicaid State Plan by violating the ADA, Rehabilitation Act, Medicaid Act, and Fourteenth Amendment. (*See* DE 29 ¶ 33.) Yet the complaint never says why or how these purported violations also constituted a breach of the state plan (or which part of the state plan was breached) and instead "leaves the Defendants to guess[.]" (DE 38 at 4.) Similarly, the complaint alleges no support for the assertion that Moore has a right to enforce this claim on the government's behalf. In general, Indiana law only allows parties to a contract to sue for a breach, and a nonparty who wishes to enforce a contract must demonstrate that (1) the parties to the contract intended to benefit her, (2) the contract imposes a duty on one of the parties in the nonparty's favor, and (3) the performance of the contract terms directly benefits the nonparty. *Flaherty & Collins, Inc. v. BBR_Vision I, L.P.*, 990 N.E.2d 958, 971 (Ind. Ct. App. 2013); *see also Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002). The contract parties' intent to benefit the third party is the controlling factor, and yet the complaint pleads nothing that supports the notion that the federal government and Indiana intended Medicaid recipients like Moore to be able to enforce the state Medicaid plan.

For all of these reasons, Count One must be dismissed but the dismissal will be without prejudice.

### Breach of Contract Claim Against Advantage (Count Two)

Count Two is a morass that claims Advantage breached its contract with the FSSA by violating the ADA, the Rehabilitation Act, and the Medicaid Act and infringing

Moore's Fourteenth Amendment rights. This count falls far short of the requirements for alleging a plausible breach of contract claim for a contract to which Moore is not a party. First, as with the breach of contract claim against the FSSA, the complaint concludes that Moore is an "intended third–party beneficiar[y]"of the contract between FSSA and Advantage without the benefit of a single supporting factual allegation. (*See* DE 29 ¶ 37.) "[L]egal conclusions can provide the complaint's framework, [but] they must be supported by factual allegations . . . [that] plausibly give rise to an entitlement to relief. *Iqbal*, 566 U.S. at 679. The complaint does not cite to language in the contract or plead any other facts that support her claim that the parties intended benefit third parties—the "controlling" factor for whether a third party can enforce a contract under Indiana law. *See Flaherty & Collins,* 990 N.E.2d at 971; *see also generally* DE 29 at 9–10. On this ground alone, Count Two must be dismissed, but again without prejudice.

*Indiana's Motion to Deny Class Certification*

Indiana's motion to dismiss and supporting memorandum also seek denial of class certification on grounds that the proposed class is not "ascertainable" and that it does not satisfy the prerequisites of Rule 23. (DE 38 at 11-18; *see also* DE 37 ¶ 7.) This is construed as a motion to deny class certification. Moore's response does not address the substance of this motion but argues the court should postpone deciding whether to certify the class until after there has been an opportunity for some discovery, which may uncover evidence Moore says she needs to carry her burden of showing that the class satisfies Rule 23. For the reasons below, Indiana's motion is granted without

prejudice to Moore's ability to replead the class allegations.

Courts have broad discretion to determine whether class certification is appropriate. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification bears the burden of showing that the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the prerequisites set out in Rule 23(b). *See Jamie S. v. Milw. Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). In addition to the Rule 23 requirements, the putative class "must be sufficiently definite that its members are ascertainable." *Jamie S.*, 668 F.3d at 493; *accord Oshana*, 472 F.3d at 513 ("The plaintiff must also show that the class is indeed identifiable as a class.") (citations omitted).

Indiana argues that class certification should be denied at this stage because the class members cannot be ascertained without an "arduous and indefinite mechanism for identifying members of the proposed class." (DE 38 at 15.) However, that is not the standard for ascertainability in this circuit. The Seventh Circuit has expressly rejected a "heightened ascertainability" requirement that requires as a prerequisite to class certification both a class that is defined by reference to objective criteria and a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015) (internal quotation marks omitted). Instead, the circuit has espoused a "weak version of ascertainability," that is ordinarily satisfied so long as the class definition is clear enough "to identify who will receive notice, who will share in the

recovery, and who will be bound by a judgment," is based on objective criteria, and does not rely upon the liability of the defendant. *Id.* at 659-60.

Nevertheless, I agree that the class definition is too vague to satisfy even the Seventh Circuit's "weaker" ascertainability requirement. In substance, the proposed class is defined as (1) Indiana Medicaid recipients who (2) have a disability, (3) were recommended for certain services or treatments by a treating provider, (4) were inaccurately evaluated during the coverage or prior approval process with Medicaid, and (5) have or will be harmed as a result. (See DE 29 ¶ 27.) That says very little about who these people actually are. What constitutes a disability for the purposes of the class? What harm must they have suffered to be included in the class? Have the Medicaid recipients with a qualifying disability (whatever it is) and who have suffered the requisite harm already been identified? If not, how would they be identified, e.g., for the purposes of notifying them of this case? "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660. The definition currently proposed identifies a location (Indiana), but that's about it.

In addition, it's clear that the class currently proposed cannot be certified because it does not satisfy the commonality requirement of Rule 23. As Indiana points out, Moore is required to show that there are "questions of law or fact that are common to the class," yet the complaint fails to raise a single "common issue that this Court could possibly litigate." (*See* DE 38 at 16.) As discussed above, all but three of Moore's claims

must be dismissed because they are untimely or not plausibly alleged or both. The only surviving claims are the Medicaid claim against the FSSA for inadequate notice and opportunity for a hearing and the Fourteenth Amendment claims against the Secretary, and Moore's complaint does none of the work of suggesting how these claims present a question that is common to the proposed class.

For these reasons, it is unnecessary to postpone deciding certification of this proposed class until after discovery as Moore suggests. Indiana's motion to deny class certification is granted but without prejudice to Moore's ability to try again, if she files a second amended complaint.

**Conclusion**

Accordingly, Indiana's motion to dismiss (DE 37) is **GRANTED IN PART**. Counts One, Three, and Four are **DISMISSED WITHOUT PREJUDICE**, and the due process and equal protection claims alleged against the FSSA in Count Nine are **DISMISSED WITH PREJUDICE**. Indiana's motion to deny class certification (DE 37 ¶ 7) is **GRANTED WITHOUT PREJUDICE**.

Advantage's motion to dismiss (DE 41) is **GRANTED**. Counts Five, Six, Seven, and Nine as alleged against Advantage are **DISMISSED WITH PREJUDICE**, and Count Two is **DISMISSED WITHOUT PREJUDICE**.

At this juncture, the remaining claims are the Medicaid claim against the FSSA (Count Eight) and the due process and equal protection claims alleged against the Secretary (Count Nine). The case will proceed on those claims, unless Moore opts to

address the deficiencies discussed above in Counts One, Two, Three, or Four. If Moore chooses to file a second amended complaint, she is **DIRECTED** to do so **no later than April 17, 2017**, and is **CAUTIONED** that any amended pleading must replead all of the claims she intends to move forward on and should otherwise comport with Local Rule 15-1.

       **SO ORDERED.**

       **ENTERED:** March 15, 2017.

                        s/ Philip P. Simon
                        JUDGE, UNITED STATES DISTRICT COURT